UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID A. FEIST, | ) | 1:03-CV-6868 OWW SMS HC |
| Petitioner, | ) ) | |
| v. | ) ) ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| PAUL SCHULTZ, | ) ) | |
| Respondent. | ) ) | |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**PROCEDURAL HISTORY**[1]

Petitioner is currently in the custody of the Bureau of Prisons and incarcerated at the Federal Correctional Institution located in Atwater, California. On August 23, 1976, Petitioner pleaded guilty to five counts of armed bank robbery, use of a firearm during a crime of violence, and murder while attempting to avoid apprehension for bank robbery. 18 U.S.C. § 2113(a),(d),(e); 18 U.S.C. § 924(c); see Exhibit 1, Respondent's Opposition to Petition for Writ of Habeas Corpus (hereinafter

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's response to the petition.

"Opposition"). Petitioner was sentenced on September 20, 1976, to life imprisonment with a recommendation that he never be released. Id. While incarcerated at the Federal Correctional Institution located in Oxford, Wisconsin, Petitioner was found guilty of attempted escape, and he received a three year sentence consecutive to his current sentence. See Exhibit 2, Opposition.

On December 17, 2003, Petitioner filed the instant federal petition for writ of habeas corpus in this Court. The petition challenges the United States Parole Commission's decision to deny Petitioner parole. On April 26, 2004, Respondent filed a response to the petition for writ of habeas corpus. On May 26, 2004, Petitioner filed a traverse to Respondent's response.

**DISCUSSION**

I. Jurisdiction

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. See, e.g., Mujahid v. Daniels, 413 F.3d 991 (9th Cir.2005) (Challenging the calculation of good time credits); Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Barden v. Keohane, 921 F.2d 476, 479 (9th Cir.1990) (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parole); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center). A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Brown, 610 F.2d at 677. Petitioner is currently in custody of the Federal

U.S. District Court
E. D. California         cd                                     2

Correctional Institution located in Atwater, California, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

II.  Summary of Petitioner's Claims

Petitioner alleges that the Bureau of Prisons has wrongfully denied him parole. Specifically, Petitioner contends the U.S. Parole Commission's interpretation of Public Law 101-182, Section 7, 101 Stat. 1266, constitutes an Ex Post Facto violation of the Constitution as applied to him. Petitioner also contends the Parole Commission's May 23, 2003, decision to deny him parole denied him due process by rescinding a parole release date that was previously established by statute. Petitioner further contends he should be immediately released because the Parole Commission was phased out on November 1, 2002, and because he has served time beyond the statutory maximum. Petitioner further argues the Parole Commission's statement of reasons for denying parole is not stated with sufficient particularity. Finally, Petitioner argues the Parole Commission's employees had an apparent or actual conflict of interest in their decision to deny him parole that rendered them without the authority do make that decision.

III.  The Federal Parole System[2]

As stated by Respondent, before the Sentencing Reform Act[3] ("SRA") took effect in 1987, a judge could only set the minimum parole release date. Actual release dates were determined by statute or by the Parole Commission. Pursuant to 18 U.S.C. § 4206(d),

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however,* That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

Applying this law to Petitioner, he would be entitled to release after serving thirty years provided the Parole Commission does not determine that he had seriously or frequently violated institutional rules or regulations or there was a reasonable probability that he would commit any Federal, State, or local

---

[2] Much of this information is taken directly from Respondent's Opposition, as Respondent sets forth a correct and thorough statement of the recent history of the federal parole system.

[3] Pub. L. No. 98-473, 98 Stat. 1987 (1984).

crime. Under 18 U.S.C. §§ 4161 and 4162, prisoners could earn credits toward their sentence for good behavior and for work; however, this did not apply to life prisoners such as Petitioner because their sentence was not phrased in fixed terms.

The Parole Commission determined actual release dates within the upper limit as fixed by 18 U.S.C. § 4206 and the lower limit as set by the sentencing court by using a grid. Respondent has submitted a sample sentencing grid. See Exhibit 7, Opposition. According to the agency's own regulations, the method of calculating the guideline range for release took into account the severity of the offense and the defendant's personal characteristics, known as the "salient factor score." 28 C.F.R. § 2.20 (1983). Under certain circumstances, the Commission could exceed the guideline limitations. Id.

The SRA took effect on November 1, 1987, and abolished the Parole Commission. However, the Parole Commission was kept in existence for five years after the effective date, to wit, until October 31, 1992, in order to process inmates who were convicted prior to the SRA and would still be incarcerated by that date. Pursuant to Section 235(b)(3) of the SRA, the Parole Commission was required to set release dates for prisoners convicted under the "old law" who would be within its jurisdiction on the day before the expiration of the five-year period. Under the SRA, the Parole Commission was required to set final release dates for those still incarcerated after the five-year period within the applicable guideline range. Section 235(b)(3) modified 18 U.S.C. § 4206 to remove the Parole Commission's discretion to act outside the guidelines. However, just over thirty days later, Section 2(b)(2) of the Sentencing Act of 1987 amended Section 235(b)(3) to eliminate the requirement that the Parole Commission set a parole date within the guideline range, effectively restoring the Parole Commission's discretion to what it was prior to the SRA.

In 1990, the Judicial Improvements Act extended the life of the Parole Commission for another five years until October 31, 1997. Pub. L. 101-650, 104 Stat. 5089 (1990). In 1996, the Parole Commission Phaseout Act extended the Parole Commission for another five years until November 1, 2002. Pub. L. 104-232, 110 Stat. 3055 (1996). On November 2, 2002, Congress passed the 21st Century Department of Justice Appropriations Act which extended the existence of the Parole Commission for another three years until October 31, 2005. Pub. L. 107-273, 116 Stat. 1758

(2002). Finally, on September 29, 2005, Congress passed the United States Parole Commission Extension and Sentencing Commission Authority Act of 2005 which extended the existence of the Parole Commission for another three years until October 31, 2008. Pub. L. 109-76, 119 Stat. 2035 (2005). Therefore, the Parole Commission now has until the final months of 2008 to set the release date for defendants incarcerated under the old law.

IV.  Standard of Review

The scope of judicial review of the Parole Commission's parole decision is "exceedingly narrow." Walker v. U.S., 816 F.2d 1313, 1316 (1987). "Judgments involving a broad range of factors that the Commission takes into account in arriving at its decision are committed to the Commission's discretion and are unreviewable even for abuse of discretion." Id., *citing* Wallace v. Christensen, 802 F.2d 1539, 1551 (9th Cir.1986) (en banc) (A decision by the Parole Commission involving the exercise of judgment among a range of possible choices or options is unreviewable). Wallace, 802 F.2d at 1552. However, a decision that "involves a plain violation of a matter which does not admit of discretion and choice," such as the failure to follow certain statutory requirements, is reviewable. Id. at 1551-52. If the Parole Commission "has rendered a parole decision 'notwithstanding' or 'above' the guidelines, a court may consider whether the Commission failed to show 'good cause' for doing so, but may only inquire whether that showing was arbitrary, irrational, unreasonable, irrelevant, or capricious." Walker, 816 F.2d at 1316, *citing* Wallace, 802 F.2d at 1551; Bowen v. U.S. Parole Comm'n, 805 F.2d 885, 888 (9th Cir.1986). Finally, a court may consider constitutional challenges and determine whether the Commission's action was so arbitrary that it violates due process. Wallace, 802 F.2d at 1552.

V.  Review of Petitioner's Claims

   A.  Ground One

Petitioner first claims the Parole Commission's interpretation of Public Law 101-182, Section 7, 101 Stat. 1266, constitutes an ex post facto violation of the Constitution as applied to Petitioner.

Section 9, Clause 3, and Section 10, Clause 1, of Article 1 of the Constitution prohibit Congress and any State from passing any ex post facto law. An ex post facto law is one which

1  imposes punishment for an act which was not punishable at the time it was committed, or increases
2  the measure of punishment of that which was originally imposed. Lindsey v. Washington, 301 U.S.
3  397, 401 (1937). For a criminal or penal law to be ex post facto, "it must be retrospective, that is, it
4  must apply to events occurring before its enactment, and it must disadvantage the offender affected
5  by it." Weaver v. Graham, 450 U.S. 24, 29 (1981) (citations and footnotes omitted).

6  Here, Petitioner received a life sentence on September 20, 1976. Under the law existing at
7  that time (18 U.S.C. § 4206), Petitioner would be entitled to be released after serving thirty years
8  *provided* the Parole Commission did not determine that he had seriously or frequently violated
9  institutional rules or regulations or that there was a reasonable probability that he would commit any
10 Federal, State, or local crime. In 1987, Congress passed the SRA which contained Section 235(b)(3).
11 As previously discussed, Section 235(b)(3) directed the Parole Commission to set a release date for
12 prisoners such as Petitioner without discretion to go outside the guidelines. However, Section
13 235(b)(3) was amended one month later and reinstated the old law restoring the Commission's
14 discretion. Petitioner's arguments are therefore without merit. The amendment Petitioner is
15 challenging has merely reinstated the law in effect at the time Petitioner was convicted. Therefore,
16 there can be no ex post facto violation since the new amendment does not disadvantage Petitioner.
17 See Evenstad v. United States, 978 F.2d 1154, 1158-59 (9th Cir.1992), *citing* Tripati v. United States
18 Parole Commission, 872 F.2d 328, 330 (9th Cir.1989) ("We have also held that the 1987 amendment
19 of § 235(b)(3), which refers to 18 U.S.C. § 4206 in setting a release date, does not disadvantage a
20 person sentenced prior to November 1, 1987, when § 4206 was the applicable parole statute."). Thus,
21 the claim should be rejected.

22  B. Ground Two

23  Petitioner next complains the Parole Commission's May 23, 2003, decision denying him
24 parole violated his due process rights by rescinding a parole release date previously established by
25 statute.

26  As pointed out by Respondent, the basis for this argument is Petitioner's calculation that the
27 guidelines have an upper limit of 206 months, which he calculates by adding 48 months to the 158
28 month lower limit of the Category Eight guidelines. This is not so. In Category Eight, with a Salient

1. Factor of 4, the lower limit is indeed 150 months. See Exhibit 7, Opposition. However, as set forth in
2. the footnote to Category Eight, "no upper limits are specified due to the extreme variability of the
3. cases within this category. For decisions exceeding the lower limit of the applicable guideline
4. category by more than 48 months, the Commission will specify the pertinent case factors upon which
5. it relied in reaching its decision . . . ." See Exhibit 7, Opposition. Thus, there is no upper limit to
6. Petitioner's sentence. See also Madonna v. U.S. Parole Com'n, 900 F.2d 24, 26 (3d Cir.1990)
7. ("[B]ecause Madonna was correctly classified as having committed a Category Eight offense, the
8. guideline range applicable to him contains no upper limit."). The footnote makes it clear that the
9. Parole Commission has the discretion to extend Petitioner's sentence beyond the guidelines provided
10. it identifies the "pertinent case factors." Therefore, Petitioner's claim must be rejected as the statute
11. did not establish a release date.
12.     C.  Ground Three
13.     Petitioner next argues he should be immediately released because the Parole Commission
14. was phased out on November 1, 2002, and he is therefore entitled to be released at the expiration of
15. 206 months pursuant to the SRA guidelines.
16.     Petitioner correctly points out that under the Parole Commission Phaseout Act of 1996, the
17. Commission's existence was set to expire on November 1, 2002. On November 2, 2002, Congress
18. passed the 21st Century Department of Justice Appropriations Authorization Act which extended the
19. Commission's existence for another three years. Therefore, there was a one-day hiatus where the
20. Parole Commission was apparently in suspension. However, Petitioner is not entitled to immediate
21. release because of this. Under the original Section 235(b)(3) of the SRA, the Parole Commission was
22. required to set a final release date within Petitioner's guideline range before it expired. Amended
23. Section 235(b)(3) required the Commission to set a final release date but the Commission had the
24. discretion to set a date outside the guidelines. Therefore, Petitioner was not entitled to immediate
25. release on November 1, 2002. The Commission would only have set a release date for him. As
26. persuasively argued by Respondent, Petitioner did not have a reasonable expectation that the release
27. date would be anything other than the "continue to expiration" decision he had been given since his
28. first parole hearing in 1992. See Exhibits 6, 8, 11, 13, Opposition.

### D. Ground Four

Next, Petitioner claims the Parole Commission's May 23, 2003, decision to deny parole and continue the case to expiration exceeds the statutory maximum release date.

Pursuant to 18 U.S.C. § 4206(d), the Bureau of Prisons has calculated Petitioner's release date to be July 14, 2008. See Exhibit 3, Opposition. This release date was determined by calculating two-thirds of his sentence of life plus three years. However, Petitioner has no absolute right to be released on that date. Pursuant to § 4206(d), Petitioner would not be released if the Commission, in its discretion, determined he should not be released. In addition, the claim is not ripe for review since the scheduled release date has yet to pass.

### E. Ground Five

Petitioner argues that the Commission's statement of reasons does not support its "outside the guidelines" decision denying parole. As correctly argued by Respondent, the Commission's decision was not outside the guidelines. As stated above, there is no upper limit to Petitioner's sentence. Therefore, the decision was within the sentencing guidelines.

### F. Ground Six

Last, Petitioner's argues that Parole Commission employees had an apparent or actual financial conflict of interest in their decision to deny Petitioner parole. Petitioner claims the Parole Commission is biased toward imposing longer terms of imprisonment as a means to assure the Parole Commission's continued existence.

Petitioner's claim is without merit. Petitioner presented this claim to the National Appeals Board, and the Board rejected it by informing Petitioner of the real reason for denial of parole: "The record in your case establishes that you have been denied parole based on the heinous and violent crime that you committed and the potential risk that you pose to the community of released on parole." See Exhibit 13, Opposition. With respect to Petitioner's general claim of a conflict of interest created by statute, the Court does not so find. Petitioner's hypothesis that the entire Parole Commission is now acting in its own interest and without due regard for its charge is completely unfounded. Petitioner provides no support for his allegation other than his insinuation, and he certainly does not overcome the presumption that the officials have acted in good faith. See Ward v.

Rock of Racism, 491 U.S. 781, 811 (1989); Bridge v. U. S. Parole Com'n, 981 F.2d 97, 106 (3d Cir.1992) (in the context of parole commissioners).

## RECOMMENDATION

Accordingly, the Court hereby RECOMMENDS that the petition for writ of habeas corpus be DENIED and the Clerk of Court be DIRECTED to enter judgment for Respondent.

These Findings and Recommendations are submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 9, 2006**            **/s/ Sandra M. Snyder**
icido3                                             UNITED STATES MAGISTRATE JUDGE